FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 10, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNA H.,[1] | No.  1:25-cv-3108-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Jenna H. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits. Plaintiff claims she is unable to work due to borderline personality disorder, post-traumatic stress disorder ("PTSD"), and pseudoseizures caused by a conversion disorder. Because the ALJ erred when evaluating

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

Plaintiff's pseudoseizure symptom claims and made no provision in the RFC for their expected limitations, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

In 2022, Plaintiff applied for benefits, claiming disability based on the above-listed impairments.[2] On the alleged onset date of January 1, 2020, Plaintiff was 19 years old and had no past relevant work.[3] The agency denied benefits both initially and on reconsideration.[4] On request, ALJ Mark Triplett held a telephone hearing, at which Plaintiff and a vocational expert testified.[5]

After the hearing, the ALJ issued a decision denying benefits.[6] The ALJ found Plaintiff's alleged symptoms were "not entirely

---

[2] AR 220-229, 230-238.

[3] AR 27, 86-89.

[4] AR 122-126, 132-136, 145-148, 153-156.

[5] AR 51-79.

[6] AR 14–34. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

consistent with the medical evidence and other evidence in the record . . . ."[7] As to the medical opinions, the ALJ found:

- the administrative findings of Howard Platter, MD, and Priyanka Gerrish, MD, to be persuasive.

- the administrative findings of Beth Fitterer, PhD, and consultative opinion of Joyce Austin, PMHNP-BC, to be not persuasive.

- the administrative findings of Renee Eisenhauer, PhD, to be persuasive.

- the treating opinion of Idalia Hernandez Aler, MS, LMHC, to be not fully persuasive.[8]

As to the sequential disability analysis, the ALJ found:

_____

[7] AR 23. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[8] AR 25-27.

- Plaintiff met the insured status requirements through June 30, 2023.[9]

- Step one: Plaintiff had not engaged in substantial gainful activity since January 1, 2020, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: borderline personality disorder, PTSD, and conversion disorder with mixed symptoms.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, and the ALJ specifically considered Listing 12.04, 12.07, 12.08, and 12.15.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels except:

  [Plaintiff] can perform simple, routine tasks consistent with a reasoning level of 1 or 2. [Plaintiff] can tolerate occasional contact with coworkers but cannot tolerate direct interaction with the general public. [Plaintiff] can perform tasks that do not require teamwork or close collaboration with coworkers. [Plaintiff] can tolerate

---

[9] An updated earnings record provides that Plaintiff's correct date last insured is September 30, 2024.

occasional changes to work routines and work processes. [Plaintiff] requires regular work breaks at 2-hour intervals.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as  marker II (DOT 920.687-126), bottle packer (DOT 920.685-026), and small products assembler.[10]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[11]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[12] Substantial evidence is

---

[10] AR 20-28.

[11] AR 1–6, 218. ECF No. 1.

[12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012),

1

2

3

4

"more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] The court looks to the entire record to determine if substantial evidence supports the ALJ's findings.[14]

5

6

7

_____

8

9

10

11

*superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

12

13

[13] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

14

15

16

17

18

19

[14] *Kaufmann v. Kijakazi*, 32 F4th 843, 851 (9th Cir. 2022). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (requiring the court to consider the entire record, not simply the evidence cited by the ALJ or the parties) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

# III.   Analysis

Plaintiff argues the ALJ committed several errors, including improperly rejecting Plaintiff's symptom reports, improperly evaluating the medical-opinion evidence, and crafting a residual functional capacity that was unsupported by the medical-opinion evidence. In response, the Commissioner argues no error occurred and that the ALJ's nondisability decision is supported by substantial evidence. As is explained below, the ALJ consequentially erred when evaluating Plaintiff's pseudoseizure symptom reports, thereby impacting the ALJ's listings analysis and RFC.

## A.   Symptom Reports: Plaintiff establishes consequential error.

Plaintiff argues the ALJ erred by improperly rejecting her reported symptoms for reasons that were not specific, clear, and convincing. The Commissioner responds that substantial evidence supports the ALJ's evaluation of Plaintiff's symptom complaints. As is discussed below, the ALJ failed to provide a supported rationale that convinces the Court that Plaintiff's reported migraine symptoms are unsupported.

1    1.    <u>Standard</u>

2    The ALJ must assess the intensity and persistence of the alleged

3    symptoms to determine how they affect the claimant's ability to work.[15]

4    Factors the ALJ may consider when evaluating the intensity,

5    persistence, and limiting effects of a claimant's symptoms include: 1)

6    objective medical evidence, 2) daily activities; 3) the location, duration,

7    frequency, and intensity of pain or other symptoms; 4) factors that

8    precipitate and aggravate the symptoms; 5) the type, dosage,

9    effectiveness, and side effects of any medication the claimant takes or

10    has taken to alleviate pain or other symptoms; 6) treatment, other than

11    medication, the claimant receives or has received for relief of pain or

12    other symptoms; and 7) any non-treatment measures the claimant uses

13    or has used to relieve pain or other symptoms.[16]

14    If the ALJ finds inconsistency between the claimant's reported

15    symptoms and the evidence, the ALJ must identify what symptom

16    _____

17    [15] 20 C.F.R. §§ 404.1529(c), 416.929(c).

18    [16] *Id.* §§ 404.1529(c), 416.929(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac.

19    § 36:25, Consideration of objective medical evidence (2025).

claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[17] This requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[18]

### 2.  Relevant Testimony

Plaintiff gave testimony both orally at her hearing and in written format, in function reports submitted to the Administration.

#### a.  *Hearing Testimony*

On April 15, 2024, Plaintiff appeared with her attorney via telephone for a hearing before ALJ Mark Triplett.[19]  Plaintiff testified that since January 2020 she had lived with her parents and her two

---

[17] 20 C.F.R. §§ 404.1529(c), 416.929(c); *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7.

[18] *Smartt*, 53 F.4th at 499 (alteration added).

[19] AR 51-79.

children, who were five and two years old.[20] She said her parents help

care for her children but their father did not.[21] She stated that she has

a driver's license and can use it to drive to medical appointments and

for errands.[22]

Plaintiff testified to brief periods of employment including part-

time work as a cashier at Dollar Tree for six months; working less than

a month at Taco Time; working full-time for one month as a caregiver;

working at a second Dollar Tree; and working as a cashier at a

Safeway.[23] She testified that she was fired from or unable to complete

any of the jobs for more than six months.[24] She explained that she

becomes overwhelmed when working and was unable to take a break to

---

[20] AR 59.

[21] *Id.*

[22] AR 59-60.

[23] AR 60-62.

[24] *Id.*

allow her to calm herself.[25] She said that when she works she gets overstimulated and has to walk away.[26]

Plaintiff testified that when she had dissociative episodes when working at Panera she burned herself several times, and that one week in particular was very difficult.[27]  She said that the disassociation would last for 15 to 30 minutes unless someone actively startled her back to focus and that during the episodes at times she was still active but not focused.[28] She stated that her conversion disorder was a response to stress and trauma and that the pseudoseizures could look like grand mal seizures at times but other times she barely twitches.[29] Plaintiff said that warning signs before her seizures include numbness

---

[25] AR 63.

[26] AR 64.

[27] AR 65.

[28] AR 65-66.

[29] AR 66.

in her limbs and a copper taste in her mouth and that if she can leave the situation and calm down the seizures can be avoided.[30]

Plaintiff said that aside from trying to avoid stressful situations she was taking three medications regularly and a fourth as needed, and attending therapy sessions, and would be starting EMDR therapy.[31] She said that the medications had helped in the past but were not currently helping and needed to be adjusted.[32] When her medications work her anger, anxiety, and depression are better but she still has issues with loss of control, her conversion disorder, and altercations with others, including her father.[33]

Plaintiff testified that about three days per week she cannot function and stays in bed, while her parents care for her children.[34] She

---

[30] AR 66-67.

[31] AR 67.

[32] AR 68.

[33] *Id*.

[34] AR 69.

has lost jobs because she could not attend work on those days.[35] On bad days, her moods cycle faster than on good days and she ranges from happy, to depressed, and to nervous very quickly.[36] She stated that she has always had issues relating to others in the workplace.[37] Aside from issues controlling her anger at work, she had times when she cried uncontrollably as well.[38] Plaintiff said she cannot concentrate and finish tasks both in and outside of work and that she has gotten into verbal altercations in the workplace with coworkers but not with supervisors.[39] She said she has quit jobs because she could not get along with others.[40]

---

[35] *Id.*

[36] *Id.*

[37] AR 70.

[38] *Id.*

[39] AR 70-71.

[40] AR 71.

Plaintiff testified that she can go out and get food or medication on her own but that if she has the option to go with one of her parents she will do that, because it makes her feel more secure.[41]

b.    _Written Testimony_

On May 10, 2022, Plaintiff completed an Adult Function Report.[42] Plaintiff reported that she lived with family in her parents' house.[43] She wrote that her illness limited her ability to work because she became unfocused when she disassociated and could not complete tasks, and that she either had seizures or disassociated.[44] She said that she will wake at 7:00 am and would pace around her house while her son watched TV and that she cared for him throughout the day.[45] She stated that she has difficulty sleeping due to night terrors and gets restless, that she has to be reminded daily by her mother to bathe and

---

[41] _Id._

[42] AR 323-330.

[43] AR 323.

[44] _Id._

[45] AR 324.

groom herself, and that she has a phobia that she will choke when eating.[46] She said that she does not prepare her own meals because she disassociates.[47]

Plaintiff wrote that she only goes out if someone is with her and that she does not go out alone.[48] She said that she gets too anxious to drive, but does go to stores to get things for her son, and that she cannot handle money because she disassociates too much.[49] She said her hobbies are reading and television and that she spends time with friends on the phone or by video chat but does not go out to social groups or events because she gets anxious.[50] Plaintiff said that her condition limits her ability to complete tasks, concentrate, understand, follow instructions, and get along with others.[51] She wrote that she has

-----

[46] AR 324-325.

[47] AR 325.

[48] AR 326.

[49] *Id*.

[50] AR 327.

[51] AR 328.

difficulty completing tasks because she disassociates a lot and that she can stay on task for 10 minutes but has to be shown instructions.[52]

Plaintiff testified that she has a conversion disorder which causes her to have seizures if she is under too much stress and has a phobia that she will choke when she is eating food.[53]

### 3. The ALJ's Reasoning Regarding Plaintiff's Symptoms Reports and Conversion Disorder/Pseudoseizures

When evaluating Plaintiff's migraine complaints, the ALJ found:

> Moreover, the claimant's statements about her daily activities are inconsistent with the limitations she asserted. For example, the claimant reported she dissociated for 15 to 30 minutes at a time on a regular basis (Hearing Testimony). However, she also stated that she has two young children at home and that she was responsible for their care including baths and meal preparation about half of the time (Hearing Testimony). She also reported she was able to shop in stores for 2 to 3 hours at a time (Ex. 4E). The claimant also told a consultative examiner that she could read a book or magazine for about 30 minutes at a time and that she could manage her own funds (Ex. 8F). Additionally, the claimant's attention and concentration, speech and language, responses to questions, engagement with providers, and understanding were noted to be normal throughout her treatment records (e.g., Ex. 2F/2; 3F/1-2, 4,

---

[52] *Id.*

[53] AR 329.

7, 9, 11, 14, 16, 17-18, 20- 21, 23-24; 6F/5, 8, 10, 11, 16-18, 29; 7F/4-6; 9F/2, 4; 10F/3, 5, 7, 9). These inconsistencies further undermine the weight that can be given to the claimant's symptom reports.[54]

In addition, the ALJ found Plaintiff's reported symptoms of self-isolation and limited functioning to be inconsistent with her activities of daily living.  She reasoned as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent within the record. The reports she made to the Social Security Administration do not match reports made to her treating/examining providers. For example, the claimant told Social Security that she self-isolated and did not interact with others, but she told her therapist that she spent time with friends (e.g., Ex. 6F/11). The claimant told Social Security she was extremely limited in her daily activities, but she told her therapist that she was attending online schooling and doing better academically (e.g., Ex. 6F/11). The claimant told Social Security that she only went shopping rarely and did not go without her parents, but her mother told her therapist that the claimant was out shopping and forgot about a scheduled session (Ex. 6F/12). The claimant also testified that her medications help with her symptoms, but there are multiple notations that she was not taking her medications as directed (Ex. 6F/11, 12, 14-18). Inconsistencies undermine the weight that can be given to the claimant's symptom reports.[55]

---

[54] AR 24.

[55] AR 23-24.

DISPOSITIVE ORDER - 17

1

2

       *a.*    *Consideration of Pseudoseizure / Dyscognitive Seizure Symptoms*

3

The ALJ found that Plaintiff's severe impairments included a

4

conversion disorder with mixed symptoms.[56] The record supports the

5

finding that Plaintiff suffered from a conversion disorder that caused

6

her to suffer from both grand mal seizures and from lesser

7

dissociative/dyscognitive seizures.

8

On April 22, 2019, Plaintiff presented to Thomas Genthe, PhD, at

9

the request of the Washington State Department of Social and Health

10

Services.[57] Plaintiff reported to Dr. Genthe that she was receiving

11

medication and therapy and had been since age fourteen, and stated

12

that her medications reduced her stress levels and the number of

13

seizures she suffered.[58] Plaintiff reported that she had back issues and

14

seizures since the age of 14, that her last seizure was a week prior and

15

16

_____

17

[56] AR 20.

18

[57] AR 374-382.

19

[58] AR 374-375.

that she has 2 seizures per week.[59]  On mental status examination, Plaintiff had a nervous affect and reported an anxious mood, had a limited fund of knowledge, and had a low level of social maturity.[60] Dr. Genthe diagnosed Plaintiff with major depressive disorder, PTSD, and conversion disorder.[61]

On September 17, 2020, Plaintiff was treated at Virginia Mason Memorial Hospital for epigastric and abdominal pain, and it was noted that her past history included gallbladder disease, anxiety, depression, and a conversion disorder.[62]

On October 6, 2020, Dr. Lyzanchuk noted that Plaintiff had been diagnosed with recurrent conversion disorder in October 2015.[63]  On

---

[59] AR 375.

[60] AR 378-379.

[61] AR 376.

[62] AR 499.

[63] AR 445.

July 7, 2021, treating source John Lyzanchuk, DO, stated that Plaintiff's recurrent conversion disorder was chronic and active.[64]

On March 18, 2023, state agency consultant Renee Eisenhauer, PhD, reviewed Plaintiff's file and opined that Plaintiff had a severe somatic/conversion disorder, a severe trauma and stress-related disorder, and depressive disorder.[65]

On January 31, 2023, treating source Idalia Hernandez Alers, MS, LMHC, completed a documentation form for Plaintiff.[66] She wrote that Plaintiff suffers from at least one mental disorder and lists her diagnoses as borderline personality disorder, PTSD, and conversion disorder with mixed presentation.[67]

There is no dispute between the treating medical sources that Plaintiff suffered from a conversion disorder with mixed presentation, and the diagnosis was also confirmed by Dr. Eisenhauer, whose

---

[64] AR 420-421.

[65] AR 95.

[66] AR 862-864.

[67] AR 862.

opinions the ALJ found mostly persuasive.[68] The diagnosis was also confirmed by consultative examiner Dr. Genthe after a lengthy and detailed psychological examination.[69]

At the time that she filed her claim, Plaintiff told the Administration that she had not had a grand mal seizure in about four years.[70] Plaintiff reported to Dr. Genthe when he examined her that she had last had a dissociative episode a week prior and has about 2 per week.[71] During her hearing, Plaintiff testified that when she had a dissociative episode they lasted anywhere from 15 to 30 minutes and that they ended when some external stimuli returned her to an oriented status.[72] She stated that when working at Panera she was

---

[68] AR 26.

[69] AR 376.

[70] AR 102.

[71] AR 375.

[72] AR 65-66.

badly burned several times because she had a dissociative episode and was not aware of hazards.[73]

Plaintiff wrote in her function report that she did not cook meals and left that task to her mother because of her dissociative episodes.[74] She testified that the hearing and wrote in her function report that she limits her driving and usually goes out when accompanied by one of her parents.[75] When examined by consultative examiner Joyce Austin, PhD, in December 2000, Plaintiff consistently reported that her parents handled cooking and that she had her parents drive her.[76]

The ALJ gave the following 3 reasons to discount Plaintiff's reported symptoms of dyscognitive seizures: that she participated in the care for her 2 young children, that she reported she was able to shop for 2 to 3 hours, and that she reported that she was able to read

_____

[73] AR 65.

[74] AR 325.

[75] AR 71, 326.

[76] AR 794-795.

for about 30 minutes at a time.[77] The Court concludes that the latter of the reasons cited has dubious relevance at best, and the two former appear to take Plaintiff's reported activities out of context.

The ALJ fails to draw a logical bridge to establish that Plaintiff's ability to read for 30 minutes is inconsistent with her suffering dissociative episodes of 30 minutes twice a week.  While it would certainly be expected that Plaintiff's ability to read and retain information during a dissociative period would be impacted, there is no logical explanation given why Plaintiff would be prevented from reading at other times.

Additionally, the ALJ's finding that it is inconsistent that Plaintiff is able to shop for 2 to 3 hours is flawed.  While the ALJ did not misstate that fact, he has taken it out of context. Context is crucial as "treatment records must be viewed in light of the overall diagnostic

---

[77] AR 24.

1    record."[78] An ALJ may not cherry pick evidence to support a conclusion

2    while ignoring other competent evidence in the record.[79]

3        Plaintiff reported to both Dr. Austin that she was not comfortable

4    driving because she feared she could dissociate and drive off the road.[80]

5    Plaintiff testified that she goes out if she is accompanied.[81] She

6    testified at her hearing that she left home when accompanied by one of

7    her parents or another person because she did not feel "secure" alone.[82]

8        Similarly, the ALJ's reasoning that Plaintiff is able to parent her

9    children half of the time fails to consider the implicit fact that this

10    _____

11    [78] *Ghanim*, 763 F.3d at 1164.

12    [79] *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (cleaned up)

13    ("Although it is within the power of the Secretary to make findings

14    concerning the credibility of a witness . . . , he cannot reach a

15    conclusion first, and then attempt to justify it by ignoring competent

16    evidence in the record that suggests an opposite result.").

17    [80] AR 791, 794.

18    [81] AR 326.

19    [82] AR 71.

implies she is not able to parent her children without significant support from her parents.  It also fails to consider Plaintiff's statements that her mother, aside from assisting in parenting her children, frequently needs to remind her to engage in basic grooming and self-care herself.[83]

The Court concludes that the ALJ's failure to consider the effects of Plaintiff's dyscognitive seizures is consequential.  As noted through the record, Plaintiff does not cook because she has burned herself while working in a kitchen and does not drive due to fear she will suffer a dyscognitive seizure and be involved in an accident. Here, the ALJ's formulated RFC makes no provision for hazards such as working at heights, unprotected places, or around machinery.[84]

Moreover, two of the three jobs cited by the VE and relied upon by the ALJ in his step-five finding, bottle packager, and small product assembler, are performed at a machine according to the DOT

---

[83] AR 324-325.

[84] AR 22-23.

description of each.[85] The third job cited, marker II, provides that the job may be performed as a machine packager or machine tender-bailer, which also implies it is performed at a machine.

The Court concludes that remand is warranted directing the ALJ to consider the limiting effects of Plaintiff's conversion disorder, particularly as to the need to address safety hazards.

### b.    *Consideration of Reports of Self-Isolation*

Because the Court has found reason to remand the case for further proceedings, it will address this issue briefly. It is Plaintiff's contention that at no time did Plaintiff allege that she self-isolates. The Court agrees.

As is noted above, Plaintiff has consistently alleged to her medical providers and consultative examiners that she does not like to leave her home alone and is usually accompanied by one of her parents. This is not self-isolation. Plaintiff reported in her statement to the Administration that she regularly speaks with her friends via video

---

[85] *Dictionary of Occupational Titles* DOT - Job Descriptions - www.occupationalinfo.org

and phone. has been equally consistent in reporting that she speaks with friends by phone or video.[86] Additionally, the ALJ's consideration that Plaintiff was out shopping on one occasion and forgot that she had a medical appointment appears speculative.  Plaintiff has consistently reported that she is able to shop for 2 to 3 hours if she is accompanied. Clearly, Plaintiff's mother was not with her, as she was home to answer the phone, but there is no indication whether Plaintiff's father was shopping with her.

Substantial evidence does not support the ALJ's finding that Plaintiff's "reports made to the Social Security Administration did not match those made to her treating/examining providers."[87]

Substantial evidence does not support the ALJ's finding that Plaintiff provided inconsistent statements about the frequency of her pseudoseizure/dyscognitive seizures or the cautions she had to take in limiting exposure to hazards.

---

[86] AR 327.

[87] AR 23.

4.    <u>Conclusion</u>

The ALJ's reasons for discounting Plaintiff's reported pseudoseizure/dyscognitive seizure symptoms are not supported by substantial evidence and are unconvincing. These symptom evaluation errors are consequential because the formulated RFC failed to provide limitations for exposure to hazards and the vocational expert identified 3 jobs available that all appeared to be performed in a factory setting either near hazardous machinery or with the use of hazardous machinery. Remand for a new evaluation of Plaintiff's reported symptoms is required.

On remand, the ALJ is to reevaluate Plaintiff's reported symptoms, including her pseudoseizure symptoms. To assist with the reevaluation, given the complexity of her condition which involves a psychiatric condition with physical symptoms, the ALJ is to order an updated consultative physical examination to be conducted by a psychiatrist, unless Plaintiff has a treating psychiatrist who will issue

an opinion.[88] The psychiatrist is to issue an opinion about Plaintiff's exertional abilities, including whether environmental/safety restrictions are needed.[89]

**B.    Other Steps: The ALJ must reevaluate on remand.**

The ALJ's errors when considering Plaintiff's pseudoseizures impacted the ALJ's sequential analysis.[90] Development of the medical record, along with a new disability evaluation by the ALJ, are needed. Therefore, the Court does not analyze Plaintiff's remaining claims regarding the ALJ's assessment of the medical opinions and the RFC.

---

[88] *See* 20 C.F.R. § 416.917; Program Operations Manual System (POMS), DI 22510.017(B).

[89] *See Varney v. Sec'y of Health & Human Servs.*, 846 F.2d 581, 585 (9th Cir. 1988), *relief modified by* 859 F.2d 1396, and *overruled by statute on other grounds in Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991), ("Side effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized.").

[90] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018).

1

### IV.  Conclusion

2    Plaintiff establishes the ALJ erred. The ALJ is to develop the

3  record and reevaluate—with meaningful articulation and evidentiary

4  support—the sequential process.

5    Accordingly, **IT IS HEREBY ORDERED**:

6    1.    The ALJ's nondisability decision is **REVERSED, and this**

7          **matter is REMANDED to the Commissioner of Social**

8          **Security for further proceedings pursuant to**

9          **sentence four of 42 U.S.C. § 405(g)**.

10    2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF**

11          **Nos. 8 and 12**, enter **JUDGMENT** in favor of **Plaintiff**,

12          and **CLOSE** the case.

13    IT IS SO ORDERED. The Clerk's Office is directed to file this

14  order and provide copies to all counsel.

15    DATED this 10th day of February, 2026.

16

17  _____
          EDWARD F. SHEA
     Senior United States District Judge

18

19